IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY W. BROWN, | : Civil No. 1:CV-04-1672 |
| Plaintiff | : |
| | : JUDGE SYLVIA H. RAMBO |
| v. | : |
| TROY WILLIAMSON, *et al.*, | : |
| Defendants | : |

**M E M O R A N D U M**

The instant matter arises from the alleged negligence of attendants at the infirmary of a federal penitentiary in Pennsylvania. Plaintiff claims that, after he sustained stab wounds from fellow inmates, the attendants did not adequately respond to his medical needs. He alleges that the United States is liable for the negligence of the attendants under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. For the reasons that follow, the court will enter summary judgment for Defendants.

**I.      Background**

   **A.      Facts**

Plaintiff Anthony Brown was incarcerated at Allenwood United States Penitentiary ("USP-Allenwood") on June 14, 2004, when he was stabbed several times. The attack by three of his fellow inmates occurred between 9:00 and 9:30 p.m. He sustained puncture wounds on his back, right lower flank, right lower abdomen, and both arms. After having been stabbed, Plaintiff ran to an office in his housing unit, where he found two prison officers. Plaintiff told the officers what

had occurred.  They told him to stay in the office and they left, presumably to look for Plaintiff's attackers.  Within five minutes, another guard entered the office.  He took Plaintiff next door to a holding cell, then asked him what happened.  Upon learning that Plaintiff had been stabbed, the officer walked Plaintiff to the prison infirmary.

When Plaintiff arrived at the infirmary, he was examined by Emergency Medical Technician ("EMT") Duttry.  EMT Duttry observed that Plaintiff was conscious, alert, and oriented during the examination.  His vital signs were normal.  EMT Duttry initially concluded, after a physical exam, that Plaintiff's wounds were superficial.  Before he left the infirmary, Plaintiff used the restroom.  In doing so, he discovered blood in his urine.  He informed the EMT and the prison officers of the blood.  They escorted Plaintiff back to the special housing unit at USP-Allenwood.

The record is unclear as to the exact timeline of the events that followed.  It seems that soon after Plaintiff was remanded to the special housing unit, he once again discovered blood in his urine.  Concerned, Plaintiff began banging on the walls or bars of his cell, yelling that he needed a physician's assistant.  No one responded to him, and no one walked by the cell on normal rounds.  After an hour of banging and yelling, EMT Duttry arrived, accompanied by prison guards.  Upon hearing that Plaintiff still had blood in his urine, they took him back to the infirmary.  There, EMT Duttry reexamined Plaintiff.  He performed the same physical exam that he had done earlier.  He concluded that one of the stab wounds might have been deeper than he originally believed.  A short time later, an ambulance arrived to transport Plaintiff to an outside hospital in Williamsport, Pennsylvania.

The doctors at the hospital performed the same physical exam that EMT Duttry had performed.  After radiological scans confirmed damage to Plaintiff's right kidney, he was put under the care of a urologist.  The urologist decided that the best course of action was to defer blood transfusions and surgery because Plaintiff's kidney was still functioning.  Plaintiff was put on bed rest and closely observed for any change in his status.  Plaintiff's kidney healed on its own with bed rest.  He was released on June 22, 2004.

Plaintiff had follow-up visits on August 16, 2004, and November 4, 2004, and December 7, 2004.  The CT scans taken of his kidney upon his last visit showed no functional abnormality.  His kidney has healed completely, leaving only a small scar as evidence of his injury.  He does not suffer any continued pain from the incident.

### B.   Procedural History

On July 29, 2004, Plaintiff filed his complaint under *Bivens*[1] and the FTCA.  Upon Defendants' motion to dismiss, or in the alternative, for summary judgment, the court dismissed Plaintiff's *Bivens* claim.  His claims under the FTCA survived and are the basis for the present motion for summary judgment by Defendants. Defendants filed a brief in support of their motion on October 16, 2006.  Plaintiff's response to Defendant's motion was due on November 3, 2006. *See* Fed. R. Civ. P. 6(a); Local R. 7.6.  Plaintiff failed to submit a responsive brief.  The court ordered Plaintiff, on November 14, 2006, to show cause no later than November 27, 2006, why Defendant's brief should not be deemed unopposed. (Doc. 91.)  Plaintiff has not responded to the order or to Defendant's motion.  Thus,

---

[1] *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

the court deems Defendant's motion unopposed and the matter is ripe for disposition.

## II.  Legal Standard – Summary Judgment

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232.

Typically, the adverse party will oppose a motion for summary judgment. In that event, once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party

"fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

In the event that the non-moving party does not file a brief in opposition, "it is 'well-settled . . . that . . . a moving party is [not] automatically entitled to summary judgment.'" *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (quoting *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989)). Federal Rule 56(e) specifically states that summary judgment for the moving party shall be granted only *if appropriate* as a matter of law. *Anchorage Assocs.*, 922 F.2d at 175. District courts must conduct a merits analysis of the moving party's motion even in the absence of opposition. *See id.* Failure to oppose a motion for summary judgment constitutes merely "a waiver of the opponent's right to controvert the facts asserted by the moving party in the motion for summary judgment or the supporting material accompanying it." *Id.* at 175-76. Accordingly, the court will examine the merits of Defendant's motion for summary judgment.

**III.**     **Discussion**

The Federal Tort Claims Act provides that the United States shall be liable for personal injury caused by the negligent act of a Government employee

acting within the scope of his employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Thus, the law of the state in which an incident occurred determines whether the United States will be held liable for the alleged negligence of its employee. *Richards v. United States*, 369 U.S. 1, 9 (1962). Because all facts of this case occurred in Pennsylvania, Pennsylvania law on medical malpractice governs.

A plaintiff's prima facie case for medical malpractice must establish 1) that the physician owed a duty to the patient; 2) the physician breached the duty; 3) the breach of duty proximately caused, or was a substantial factor in causing the injury to the patient; and 4) the patient's damages are a direct result of the injury. *Mitzelfelt v. Kamrin*, 584 A.2d 888, 891 (Pa. 1990). Depending on the complexity of the patient's injury, he may be required to produce an expert witness "who will testify, to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered." *Id.* at 892. Expert testimony is not required, however "where the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of the ordinary experience and comprehension of even nonprofessional persons." *Welsh v. Bulger*, 698 A.2d 581, 586 n.11 (Pa. 1997) (quoting *Chandler v. Cook*, 265 A.2d 794, 796 n.1 (Pa. 1970)).

**IV.**     <u>**Analysis**</u>

The undisputed material facts show that the United States is entitled to summary judgment. Plaintiff alleges that the medical staff of the prison owed him a duty to provide competent medical care and that duty was breached. He offers no evidence, however, that his treatment at USP-Allenwood had an adverse effect on his health or recovery. Plaintiff was not medically acute after the attack. He did not require surgery, blood transfusions, or any other type of emergency medical care. In fact, his kidney healed on its own in a matter of days. Thus, even assuming that the infirmary staff breached the community standard of medical care in misdiagnosing Plaintiff and delaying outside treatment, Plaintiff's cause of action cannot withstand summary judgment because he has offered no evidence of harm resulting from their actions. Accordingly, summary judgment will be entered for Defendants.

s/Sylvia H. Rambo<br>
SYLVIA H. RAMBO<br>
United States District Judge

Dated: December 5, 2006.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANTHONY W. BROWN,** : | Civil No. 1:CV-04-1672 |
| Plaintiff : | JUDGE SYLVIA H. RAMBO |
| v. : | |
| **TROY WILLIAMSON, et al.,** : | |
| Defendants : | |

**O R D E R**

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

1) Defendant's motion for summary judgment (Doc. 87) is **GRANTED**.

2) The Clerk of Court shall enter judgment in favor of Defendants and against Plaintiff and close the case.

                                         s/Sylvia H. Rambo
                                         SYLVIA H. RAMBO
                                         United States District Judge

Dated:  December 5, 2006.